UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>– against –<br><br>GEORGE LEVY,<br><br>Defendant. | STATEMENT OF REASONS FOR SENTENCE PURSUANT TO 18 U.S.C. § 3553(c)(2)<br><br>16-CR-270  |

JACK B. WEINSTEIN, Senior United States District Judge:

## Table of Contents

I. Introduction ................................................................................................................. 1
II. Instant Offense ............................................................................................................ 2
III. Guilty Plea .................................................................................................................. 3
IV. Sentencing Hearing .................................................................................................... 3
V. Offense Level, Criminal History Category, and Sentencing Guidelines Range ............ 3
   A. Section 2K2.1(b)(6)(B) ............................................................................................ 4
   B. Section 3C1.1 ......................................................................................................... 5
   C. Summary ................................................................................................................ 6
VI. Law ............................................................................................................................ 7
VII. 18 U.S.C. § 3553(a) Considerations ......................................................................... 8
VIII. Sentence .................................................................................................................. 9
IX. Conclusion ............................................................................................................... 10

I. Introduction

The defendant, George Levy, was convicted of being a felon in possession of a handgun. A former gang member, he believed—with justification—that he was in physical danger from potential attackers and needed the gun for his own protection. Nevertheless, a high sentence for carrying the firearm is appropriate to help limit the scourge in New York City of illegal guns. The imposition of a substantial prison sentence may help achieve some general deterrence, even

if the effect is limited. As indicated in Part VIII, *infra*, the indicated harsh sentence may be ameliorated if special justifying factors for the crime exist; this principle has long been recognized in literature and practice.

## II. Instant Offense

Defendant George Levy is a 34-year old man with a GED. Presentence Investigation Report ("PSR") at 2. While on supervised release in connection with a drug trafficking felony in the Northern District of New York (*see id.* at ¶ 3), he was in Brooklyn with a female companion. *Id.* at ¶ 4. In the middle of the night, after picking up groceries, she drove him to her apartment, located in a high crime area. *United States v. Levy*, 217 F. Supp. 3d 643, 651 (E.D.N.Y. 2013). Levy, standing outside the open passenger door he had just exited, was leaning back through the door when New York City Police Department ("NYPD") officers on cruising crime control approached the pair. *Id.* at 652. One officer put his head into the car in the same way the defendant had done; he saw a .32 caliber Cobra pistol with a silver handle sticking out from under the front passenger seat of the car. *Id.* at 653.

Levy was arrested and brought to the 73rd NYPD Precinct. PSR at ¶¶ 6-7. After being Mirandized, he admitted to possession of a firearm, writing in a statement that that gun was "used to protect my life and my family. . . ." *Id.* at ¶ 7. He explained that he formerly belonged to the Bloods street gang, and his membership in that gang made him a target for both Bloods and Crips gang members. *Id.* at ¶ 8.

A search of defendant at the precinct produced a small plastic bag of marijuana and five plastic bags containing 3.32 grams of crack-cocaine. *Id.* at ¶ 7.

### III. Guilty Plea

Levy pled guilty to the only count in the indictment: he had violated 18 U.S.C. § 922(g)(1) because he was felon in possession of a firearm. Transcript of Criminal Cause for Pleading, Dec. 9, 2016, ECF No. 40 at 26:15-18.

### IV. Sentencing Hearing

This court conducted an evidentiary sentencing hearing. *See* Aug. 3, 2017 Hr'g Tr. The proceedings were videotaped to record courtroom atmosphere, as well as some of the subtle factors and considerations that a district court must consider in imposing a sentence. *See* 18 U.S.C. § 3553(a); *In re Sentencing*, 219 F.R.D. 262, 264-65 (E.D.N.Y. 2004) (describing the value of video recording for the review of sentences on appeal).

### V. Offense Level, Criminal History Category, and Sentencing Guidelines Range

The base offense level for a violation of 18 U.S.C. § 922(g)(1) is 20 when "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a controlled substance offense," as is the case here. United States Sentencing Commission Guidelines ("U.S.S.G." or "the guidelines") § 2K2.1(a)(4)(A); PSR at ¶ 18. A decrease of two levels is granted because Levy accepted responsibility for the offense. U.S.S.G. § 3E1.1(a); PSR at ¶ 25. A decrease of one more level was earned because the defendant notified the government of his intention to plead guilty in a timely manner. PSR at ¶ 26; U.S.S.G. § 3E1.1(b). These adjustments placed defendant's offense level at 17 before enhancements.

Levy has an extensive criminal history, with multiple convictions for drug-related offenses (*see* PSR at ¶¶ 35-37) and a 2006 conviction for criminal possession of a loaded firearm in the third degree. *Id.* at ¶ 32. In total, his convictions resulted in a criminal history score of 10, but, because he was on federal supervised release when he committed the instant offense, the total

was increased by two points. *Id.* at ¶¶ 38-39; U.S.S.G. § 4A1.1(d). His criminal history score of 12 puts him in criminal history category V. PSR at ¶ 40.

The parties disagreed on the applicability of two sentencing enhancements: a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B) and a two-level enhancement pursuant to U.S.S.G. § 3C1.1. The government's position, that both enhancements apply, would result in an offense level of 23 and a guidelines range of 84 to 105 months of incarceration; the defendant's position, that neither applies, would lead to an offense level of 17 and a guidelines range of 46 to 57 months of incarceration.

### A.     Section 2K2.1(b)(6)(B)

Section 2K2.1(b)(6)(B) enhances an offense by four levels if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." According to the government, this addition applies because the defendant admitted that he was planning on selling the cocaine he was carrying—a felony—and also agreed that he was planning on arming associates to aid them in selling narcotics. *See* Aug. 3, 2017 Hr'g Tr. Levy argues that he only carried the weapon for his personal protection, and, though he admits he had the intent to distribute the cocaine, the firearm had "no connection" with this plan; in other words, the possession of these different items of contraband were unrelated and coincidental. *See id.* Bolstering the argument that the gun and drugs were unrelated, Levy claims that he was planning on leaving the gun in the car parked on the street though he was bringing the drugs with him into the apartment. *See id.* The defendant declined the opportunity to further explore this factual issue. *Id.*

The court finds that the gun was within Levy's reach and the cocaine was on his person when the officers observed him leaning into the car. While proximity alone is not sufficient to

4

find that the firearm would be used "in connection" with the intended drug distribution, *United States v. Ortega*, 385 F.3d 120, 123 (2d Cir. 2004), the court does not find credible defendant's claim that he was planning on leaving the gun he needed to protect himself and his family in the vehicle, in possible sight of a passerby. *See Levy*, 217 F. Supp. 3d at 655 ("[T]he firearm found in the [car] was located underneath the front passenger side seat, but was in a position that made it visible to someone standing outside the open door of the front passenger side."). His post-arrest statements, and the well-known phenomenon of criminals robbing drug dealers, indicate that at least one of the purposes of his possession of the firearm was to protect himself and his associates while they distributed narcotics. This conclusion is sufficient to prove that the firearm was possessed "in connection" with another felony. The four-level enhancement applies.

### B. Section 3C1.1

Section 3C1.1 is applicable when a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction. . . ." The government argues that Levy obstructed justice through the filing of an affidavit containing false statements in connection with his motion to suppress. Specifically, it argues that the defendant lied about where he placed the gun and about statements made by the police concerning the Administration for Children's Services ("ACS") and his girlfriend's children.

Defendant swore that the gun was "entirely hidden under the seat and the front passenger floor mat. No part of the firearm was visible from the outside of the vehicle." *Levy*, 217 F. Supp. 3d at 653. The court found that the gun was visible. *Id.* at 655-56. This discrepancy does not demonstrate that Levy "willfully" obstructed justice; he may have truly believed the gun was hidden. He was wrong.

5

The government argues in the alternative that Levy obstructed justice when he swore that his written statement was "procured through an unlawful threat to a family member because he and his girlfriend were held together in the same room and told that if defendant did not write a statement taking responsibility for the gun, the officers would call [the City child protective agency] to take . . . custody of her eight children." *Levy*, 217 F. Supp. 3d at 669 (internal quotation marks and punctuation omitted). The court believed the testimony of the officers, who denied making any threats, and it also found that the police had appropriately informed Levy and his girlfriend "of a potential procedure predicated on protecting the welfare of [her] children." *Id.* A late-night gun-based post-arrest interrogation is a stressful situation for all the persons involved. There may have been confusion and a miscommunication about ACS and Levy's friend's children. Levy may have misinterpreted a statement by the officers, but he did not appear to do so "willfully."

> [Section 3C1.1] is not intended to punish a defendant for the exercise of a constitutional right. . . . In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements may result from confusion, mistake, or faulty memory and thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.

U.S.S.G. § 3C1.1 Application Note 2. The two-level enhancement is inapplicable.

### C. Summary

In sum, defendant's total adjusted offense level is 21 with a criminal history category of V. The guideline is 70-87 months of incarceration. The maximum term of imprisonment is ten years. PSR at ¶ 102; 18 U.S.C. § 924(a)(2). The court may impose up to three years of supervised release. PSR at ¶¶ 105-06; 18 U.S.C. § 3583(b)(2); U.S.S.G. § 5D1.2(a)(2).

## VI. Law

In *United States v. Booker*, the Supreme Court held that the guidelines are advisory, thereby allowing a departure by the sentencing court when a departure is in the interest of justice in light of the statutory concerns expressed in section 3553(a). *United States v. Booker*, 543 U.S. 220, 245-46 (2005); *see also United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) ("It is now, however, emphatically clear that the Guidelines are guidelines—that is, they are truly advisory. A district court may not presume that a guidelines sentence is reasonable; it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense.").

If the sentencing court provides a written statement of reasons, it shall be "a simple, fact-specific statement explaining why the Guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Rattoballi*, 452 F.3d 127, 138 (2d Cir. 2006), *abrogated in part on other grounds by Kimbrough v. United States*, 552 U.S. 85 (2007). The written statement should demonstrate that the sentencing court "'considered the parties' arguments' and that it has a 'reasoned basis for exercising [its] own legal decisionmaking authority.'" *Cavera*, 550 F.3d at 193 (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).

In view of the excessive incarceration rates in the recent past and their unnecessary, deleterious effects on individuals sentenced, society, and our economy, parsimony in incarceration is prized. *See, e.g.*, 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary."); National Research Council of the National Academies, *The Growth of Incarceration in the United States, Exploring Causes and Consequences*, 8 (2014) ("*Parsimony*: the period of confinement should be sufficient but not greater than necessary to achieve the goals of sentencing policy.") (emphasis in original).

## VII.  18 U.S.C. § 3553(a) Considerations

The court considered the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

The defendant was raised in public housing in Brownsville, Brooklyn. PSR at ¶ 53. He lived with an extended family, and a number of his family members were addicted to crack-cocaine. *Id.* While a teenager, a relative moved into Levy's residence and was physically abusive. *Id.* at ¶ 54. At 15, Levy joined the Bloods street gang, and at 17, he moved to Binghamton with his cousin in an attempt to escape the poverty and drug abuse that plagued his household. *Id.* at ¶¶ 54-55. The cousin was shot after a fight and died in the defendant's arms. *Id.* at ¶ 54.

Levy began a relationship with Keesa Levy (née Johnson) in 2003. They married in 2015. She has alcohol abuse problems, mental ailments and was physically abusive towards defendant. She stabbed him in 2015. Though they did not have any children together, Levy took care of his wife's children until the couple's separation in 2015. *Id.* at ¶¶ 58-59.

Prior to his arrest, he was residing with his mother in Brooklyn and in a romantic relationship with the woman he was with on the night of his arrest. *Id.* at ¶¶ 62-63. Members of this friend's family had recently been killed. Aug. 3, 2017 Hr'g Tr. Defendant's mother described her son as an "easy going kid that got caught up in the wrong things," and contended that there are people in Brooklyn who "don't like him," and might hurt him. PSR at ¶ 64.

Levy believes he has suffered from depression throughout his life, but he has never had any formal treatment for mental illness. *Id.* at ¶¶ 69-72. He first used marijuana when he was 12 years old, and soon after was introduced to hallucinogens, cocaine, alcohol, and other intoxicants

8

that became a part of his daily routine. *Id.* at ¶¶ 73-77. He participated in a drug treatment program while previously incarcerated. *Id.* at ¶ 78.

Defendant attended school through 11th grade, but dropped out because of fear of gang violence. *Id.* at ¶ 83. He received a GED while in custody. *Id.* at ¶ 82.

He has worked at a variety of low-paying jobs, most of which involved manual labor. *Id.* at ¶¶ 85-92. He has no assets and is unable to pay a fine. *Id.* at ¶¶ 96-101.

## VIII. Sentence

For many criminal offenses, the length of the sentences advised by the guidelines do not align with the court's obligation to sentence a defendant parsimoniously and in accordance with section 3553(a) considerations. *See, e.g., United States v. Bannister*, 786 F. Supp. 2d 617, 662-63 (E.D.N.Y. 2011) (rejecting guideline sentences in cases involving crack-cocaine convictions because of "general policy considerations"); *United States v. R.V.*, 157 F. Supp. 3d 207, 260 (E.D.N.Y. 2016) ("[A] recent survey by the Sentencing Commission demonstrated that about seventy percent of federal judges considered the Guidelines for child pornography possession and receipt too severe.").

A high guidelines sentence may nevertheless be appropriate in a firearm case. Though longer sentences may not always have a general deterrent effect, *see United States v. Lawrence*, 2017 WL 2462530 at *5 (E.D.N.Y. June 6, 2017) (discussing the potential futility of "imposing a long incarcerative sentence on [a person convicted of a gun crime] in order to deter future gun violence by members of the community"), a substantial sentence in a case involving guns—regardless of the motive of the possessor of the weapon—is the primary means by which the court can communicate to the public that firearms are inimical to the safety of persons living in a densely-populated urban community, and that illegal possession will be severely punished.

Yet, some consideration of a reduced period of incarceration may be justified where, for example, possession of the gun has some justification—here, enemies were out to hurt defendant and those he was close to. *Cf.* Fyodor Dostoevsky, *Crime and Punishment* 508-09 (Constance Garnett trans., 1914, Barnes & Nobles Classics ed. 2007) (1866) (Rasnolikov's justifications for his crimes merited a shorter penal sentence than what would have otherwise been imposed: "Rasnolikov was not quite like an ordinary [criminal] . . . there was another element in the case. . . . [T]he criminal was in consideration of extenuating circumstances condemned to" a shorter penal term).

Defendant is sentenced to 70 months of incarceration. The court recommends that he not be placed at Federal Correctional Institution Raybrook because placement there may put Levy in physical danger from other prisoners. If he is given an incarceratory sentence in the Northern District of New York for violating his supervised release in connection with this conviction, the term of incarceration on this sentence shall run concurrently with that sentence. He is subject to three years of supervised release, and subject to the conditions specified in subsections (a), (c), and (d) in section 5D1.3 of the sentencing guidelines, and other special conditions the court specified. *See* Aug. 3, 2017 Hr'g Tr. He shall attend treatment for psychological problems, and drug and alcohol abuse as directed by this court's Probation Office. He shall pay a $100 special assessment. No fine is assessed because of his lack of ability to pay.

## IX. Conclusion

Levy has a history of violence and a prior gun crime. A substantial term of incarceration is necessary to encourage him—and others like him—to cease relying on firearms for personal security or any other reason.

SO ORDERED.

_____
Jack B. Weinstein
Senior United States District Judge

Date: August 9, 2017
      Brooklyn, New York